UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 05-CV-4275 (JFB) (ARL)

———————

SUSAN BLAIZE-SAMPEUR AND FRANTZ SAMPEUR,

Plaintiffs,

VERSUS

MAURICE MCDOWELL, LOST AND FOUND RECOVERY, INC.,
HOME MERGERS, L.L.C., POUI LAND SERVICES, L.L.C., SOFYA LEVY,
DONNAHUE GEORGE, TOM MOONIS, CARIANNE JOHNSON,
SOUTHERN STAR MORTGAGE CORP., FIRST NATIONAL BANK
OF ARIZONA, AURORA LOAN SERVICES, INC., AND CHATEAU PROPERTIES,

Defendants.

———————

MEMORANDUM AND ORDER
October 18, 2006

———————

JOSEPH F. BIANCO, District Judge:

Plaintiffs *pro se* Susan Blaize-Sampeur and Frantz Sampeur (collectively "plaintiffs") bring the present action alleging claims of fraud and civil RICO violations against twelve defendants as a result of a transaction by which plaintiffs attempted to refinance their home. Presently before the Court are four motions by four separate defendants. Defendants Tom Moonis (hereinafter "Moonis") and First National Bank of Arizona (hereinafter "FNBA") move to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants Southern Star Mortgage Corp. (hereinafter "Southern Star") and Aurora Loan Services, Inc. (hereinafter "Aurora") move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons that follow, defendants' motions are granted.

———

[1] The Court will refer to the four moving defendants, Moonis, FNBA, Southern Star and Aurora, collectively as "the moving defendants."

I. BACKGROUND

A. FACTS

For purposes of this motion, the facts as alleged in the complaint are assumed to be true and are construed in a light most favorable to plaintiffs, the non-moving party. As plaintiffs are proceeding *pro se*, the Court will "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

In approximately April 2004, plaintiffs fell in arrears on their mortgage payments on their home. (Compl. ¶¶ 38-39.) Plaintiffs sought refinancing in order to pay their mortgage arrears. (*Id.* ¶ 39.) Plaintiffs learned that they could not refinance without a co-signer because their credit scores were too low. (*Id.* ¶ 41.) Around May 2004, plaintiffs were referred to Maurice McDowell (hereinafter "McDowell") who devised a plan to help them refinance the premises. (*Id.* ¶¶ 41-45.) The plan provided that plaintiffs would temporarily transfer their home to a third party with a good credit rating who would qualify for a mortgage. (*Id.* ¶ 45.) The title would be temporarily transferred to that third party for four to six weeks and, after the financing was obtained, the title would be transferred back into plaintiffs' names. (*Id.*) McDowell informed plaintiffs that, at closing, an amount equal to twelve months of the new mortgage payments would be placed in an escrow account that would be held by McDowell and used to pay the monthly mortgage for one year. (*Id.*) McDowell also represented that plaintiffs would remain in possession of the home at all times, would close on the new loan within thirty days, he would help repair plaintiffs' credit, and that, within one year, plaintiffs would qualify for a new mortgage in their names. (*Id.*)

On or around June 16, 2004, plaintiffs' mortgage was seven months in arrears and their home was in pre-foreclosure status. (*Id.* ¶ 48.) Plaintiffs initially refused to pay the $50,000 fee requested by McDowell for his services. (*Id.* ¶¶ 46-47.) In approximately July 2004, however, they agreed to go along with the plan after McDowell promised to "work something out" with plaintiffs, though he never informed them of the actual fee. (*Id.*)

McDowell arranged to have a third party, defendant Sofya Levy (hereinafter "Levy"), obtain financing from defendant First National Bank of Arizona. (*Id.* ¶ 58.) A closing was held on September 28, 2004, where plaintiffs were introduced to defendant Donnahue George and informed that he was their attorney for their closing. (*Id.* ¶ 57.) Also present at the closing were defendant Carianne Johnson, who was the title closer present on behalf of defendant Poui Land Services, LLC, and defendant Moonis, who was an attorney representing defendant FNBA. (*Id.* ¶¶ 59-62.) Levy executed a mortgage on the premises for $427,500.00. (*Id.* ¶ 63.) Plaintiffs allege that Johnson, as the title closer and as agent for Poui Land Services, notarized Levy's signature and collected fees to record the deed and mortgage. (*Id.* ¶¶ 67, 71.) Plaintiffs allege that the deed was never recorded. (*Id.* ¶¶ 69, 72.)

Plaintiffs allege that, in representing FNBA in connection with the transaction, defendant Moonis "prepared a fraudulent HUD-1 Settlement Statement" (hereinafter "the HUD-1"). (*Id.* ¶ 73.) Specifically,

2

plaintiffs allege that the HUD-1 lists Levy as having made a deposit of $22,500, even though, according to plaintiffs, no such deposit was made for the purchase of the home. (*Id.* ¶¶ 75-76.) The HUD-1 also lists a contribution of $2,151.72 by Levy at the September 28, 2004 closing, and plaintiffs allege that no such monetary contribution was made by Levy. (*Id.* ¶¶ 77-78.) In addition, the HUD-1 lists a cash payment of $89,965.12 to plaintiffs at the closing, even though plaintiffs allege they only received $7,500 from the closing. (*Id.* ¶¶ 82-83.) Finally, the HUD-1 lists a commission of $9,650 to defendant Chateau Properties, and plaintiffs allege they never retained or used Chateau Properties or any other real estate broker in connection with this transaction. (*Id.* ¶¶ 85-86.)

Plaintiffs allege that McDowell retained approximately $55,613.64 from the mortgage loan proceeds, purportedly to place in escrow to pay the monthly mortgage. (*Id.* ¶ 88.) Plaintiffs further allege that the mortgage on the premises was approximately five months in arrears at the time the complaint in this action was filed. (*Id.* ¶¶ 45, 89.)

B. Procedural History

On September 8, 2005, plaintiffs Susan Blaize-Sampeur, Frantz Sampeur, and Jacqueline Brown, represented by counsel, filed a complaint in the instant action against defendants Maurice McDowell, Lost and Found Recovery, Inc., Home Mergers, LLC, Poui Land Services, LLC, Sofya Levy, Donnahue Goerge, Tom Moonis, Carianne Johnson, Southern Start Mortgage Corp., First National Bank of Arizona, Aurora Loan Services, Inc., and Chateau Properties. Plaintiffs assert state law fraud claims and violations of the Racketeering Influenced and Corrupt Organization Act (RICO) against all defendants. (*Id.* ¶¶ 90, 95-98, 99-102, 103-132.) On February 9, 2006, the case was reassigned from the Honorable Leonard D. Wexler to this Court. A pre-motion conference was scheduled at the request of defendants Southern Star Mortgage, First National Bank of Arizona, Tom Moonis, and Aurora Loan Services. On March 2, 2006, the Court received an *ex parte* letter from counsel for plaintiffs requesting permission to withdraw as counsel. By Order dated March 2, 2006, the Court granted the request and gave plaintiffs additional time to secure new counsel. The Court held a pre-motion conference on April 10, 2006, at which plaintiffs failed to appear. In response to an order from this Court, by letter dated April 24, 2006, plaintiffs Susan Blaize-Sampeur and Frantz Sampeur stated their intent to proceed with this action.[2] The Court issued a briefing schedule which was subsequently amended by Order dated April 25, 2006, to allow plaintiffs additional time to attempt to find counsel. Plaintiffs did not secure new counsel and now proceed *pro se*. On July 21, 2006, defendant Aurora Loan Services filed a motion for judgment on the pleadings. On September 7, 2006, defendant Moonis moved to dismiss the complaint. On September 8, 2006, defendant FNBA moved to dismiss and Southern Star Mortgage filed a motion for judgement on the pleadings. The remaining named defendants have not answered or otherwise appeared in this action. Oral argument on the outstanding motions was held on October 11, 2006.[3]

---

[2] By letter dated June 14, 2006, Jacqueline Brown informed the Court that she is not a party to this action. Thus, she was subsequently terminated from this case.

[3] Defendant Southern Star Mortgage rested on its papers.

3

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005)*, cert granted,* 2006 U.S. LEXIS 4911 (U.S. June 26, 2006) (No. 05-1126). A motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is evaluated under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. *See Nicholas v. Goord*, 430 F.3d 652, 658 n.8 (2d Cir. 2005).

## III. DISCUSSION

### A. FRAUD AND FRAUDULENT MISREPRESENTATION

Plaintiffs' second, third and fourth causes of action allege claims of common law fraud and fraudulent misrepresentation against moving defendants Moonis, Southern Star and FNBA.[4] "Under New York law, 'to state a of action is brought under Article 15 of the New York Property and Proceedings Law and seeks to set aside the deed from plaintiffs to defendant Sofya Levy. Accordingly, this cause of action appears to be alleged only against Sofya Levy, the alleged title holder of the property at issue. Therefore, to the extent that this claim is brought against FNBA and Aurora, there is no basis for relief under Article 15 given the allegation that Levy holds the deed. Additionally, plaintiffs' sixth cause of action alleges that plaintiffs were never given notice of their right to rescind pursuant to 15 U.S.C. § 1635 of the Truth in Lending Act. Though specific defendants are not identified as to this cause of action, to the extent it was plaintiffs' intent to proceed with their sixth cause of action against all defendants, the Court finds that this cause of action cannot proceed against the moving defendants. 15 U.S.C. § 1635(a) requires a creditor "in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended" to "clearly and conspicuously disclose, in accordance with any regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." *Id.* Although FNBA is a creditor, it is not a creditor *to the plaintiffs* in this transaction. Rather, FNBA made a mortgage loan to defendant Levy. (Compl. ¶ 63.) Aurora and Southern Star are not alleged to be creditors at all. In particular, as alleged, Southern Star is a mortgage broker and Aurora is a loan servicing company. Therefore, based on the facts alleged in the complaint, none of the moving defendants acted as a creditor to plaintiffs in which a security interest in plaintiffs' principal dwelling was retained or acquired. Instead, based on the facts alleged in the complaint, defendant Levy was the obligor. (Compl. ¶ 63.) Thus, § 1635 does not apply to plaintiffs here. *Moazed v. First Union Mortg. Corp.*, 319 F. Supp. 2d 268, 273 (D. Conn. 2004) ("Rights to rescind under [the Truth in Lending Act] extend to obligors only.") Accordingly, though it is unclear from the complaint whether

---

[4] Plaintiffs' first cause of action, in addition to listing defendant Sofya Levy, names FNBA and Aurora in the paragraph. However, the first cause

4

cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'"[5] *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 119 (1st Dep't 2003)). Fed. R. Civ. P. 9(b) requires all averments of fraud and the circumstances constituting fraud to be stated with particularity. "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Lerner*, 459 F.3d at 290 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). In addition, "[a]lthough Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent.'"

---

plaintiffs' sixth cause of action is alleged against the moving defendants, to the extent it is alleged against moving defendants, that claim against them is also dismissed.

[5] The Second Circuit has also articulated a "slightly different formulation" of the elements of a fraud claim under New York law which includes a showing of an intent to defraud. *See Lerner*, 459 F.3d at 291 n.8. Those elements are: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damages to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). For purposes of the pending motions, however, this slight distinction need not be addressed because the complaint fails on grounds unrelated to that issue.

*Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, No. 99-CV-3227 (JGK), 2000 U.S. Dist. LEXIS 14043, at *23 (S.D.N.Y. Sept. 22, 2000) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "These requirements ensure that 'a complaint alleging fraud' is filed 'only after a wrong is reasonably believed to have occurred,' and 'not to find one.'" *Abercrombie v. Andrew College*, 438 F. Supp. 2d 243, 272 (S.D.N.Y. 2006) (quoting *Segal v. Gordon*, 467 F.2d 602, 607-08 (2d Cir. 1972)). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987). The Court must keep in mind, however, the particularity requirements of Fed. R. Civ. P. 9(b) must be read in conjunction with Fed. R. Civ. P. 8 which only requires a "short and plain statement" of the claim. FED. R. CIV. P. 8.

Here, even applying the less stringent standard granted to *pro se* litigants,[6] plaintiffs' allegations of fraud fail to comply with Fed. R. Civ. P. 9(b). Plaintiffs' second and third causes of action state that defendants "fraudulently transferred title to plaintiffs' property," that defendants "fraudulently created a mortgage security interest for their benefit in the [p]laintiffs' property," that defendants "misrepresented themselves as

---

[6] Though plaintiffs now proceed *pro se*, the complaint was filed by an attorney representing plaintiffs at the start of this action. Accordingly, though the liberal standard granted to *pro se* litigants is not necessarily required when construing the complaint in this action, in an abundance of caution, the Court applies such a standard to this complaint.

5

aiding [p]laintiffs in refinancing their property to prevent and save their home" and that "plaintiffs were damaged." (Compl. ¶¶ 95-102.) Plaintiffs failed to identify any statements by FNBA or Southern Star that plaintiffs thought were fraudulent. In fact, it is unclear from the complaint that FNBA or Southern Star made any statement or potential misrepresentation to plaintiffs with respect to the mortgage and the refinancing of plaintiffs' home. Plaintiffs also failed to identify the speaker, where and when the statements were made, and explain why the statements were fraudulent. Plaintiffs' second and third causes of action against Moonis similarly suffer such defects.

As to Moonis, however, plaintiffs do identify several specific statements that plaintiffs allege were fraudulent in the HUD-1, relating to plaintiffs' fourth cause of action. Yet, plaintiffs still fail to state a claim of fraud and misrepresentation as to Moonis.

The fourth cause of action states that Moonis "prepared a fraudulent HUD-1," that Moonis "had constructive knowledge that the HUD-1 Settlement Statement was fraudulent and misrepresented the true fees paid by the [p]laintiffs and the true fees received by [d]efendants" and "plaintiffs were damaged." (Compl. ¶¶ 103-106.) Plaintiffs, however, have not alleged that they relied on any misrepresentations made by Moonis. Further, plaintiffs have not alleged any facts from which it might be inferred that Moonis acted fraudulently. Plaintiffs have merely alleged that Moonis prepared the HUD-1 and that "upon information and belief" Moonis knew the HUD-1 was fraudulent and made misrepresentations as to the actual fees paid by plaintiffs and received by defendants. (Compl. ¶¶ 103-106.) "Although it is true that matters peculiarly within the defendant's knowledge may be pled 'on information and belief,' this does not mean that those matters may be pled lacking any detail at all." *First Capital Asset Mgmt v. Satinwood*, 385 F.3d 159, 179 (2d Cir. 2004); *see also DiVittorio*, 822 F.2d at 1247 (recognizing, as an exception to the rule, that "fraud allegations may be . . . alleged [on information and belief] as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based."); *Toussaint v. JJ Weiser & Co.*, No. 04-CV-2592 (MBM), 2005 U.S. Dist. LEXIS 2133, at *32 (S.D.N.Y. Feb. 9, 2005) ("To base a general allegation of fraud on allegations that themselves rest 'on information and belief' without any factual support or source does not satisfy Rule 9(b)."). "'The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Shields*, 25 F.3d at 1128).

Here, though plaintiffs allege that statements in the HUD-1 were false, plaintiffs have alleged no facts that would indicate Moonis knew the statements were false, facts that demonstrate that Moonis had motive to make false representations, or strong circumstantial evidence of conscious misbehavior or recklessness on the part of Moonis.

Plaintiffs have made a number of specific allegations of fraud and misrepresentation against McDowell. McDowell, however, is not a party to the present motion to dismiss and, according to plaintiffs, they have not

6

been able to effectuate service on McDowell. In opposition to the present motions, plaintiffs assert, "[c]o-defendants *maybe* [sic] party to a conspiracy, and until is proved otherwise, we must continue this action." (Plaintiffs' Answer filed in Opposition to Defendants' Motions at 5[7]) (emphasis in original). Plaintiffs cannot merely assert claims of fraud against every individual and company that touched the transaction at issue, without any specific allegation to support such claims, in an effort to weed out and identify the wrongdoers. In the present action, it seems plaintiffs are attempting exactly that. Plaintiffs, however, using that approach, cannot satisfy the pleadings requirements as to the moving defendants. Accordingly, plaintiffs' claims of fraud, which include fraud and fraudulent misrepresentation, are dismissed against the moving defendants.

B. CIVIL RICO

Plaintiffs' fifth cause of action attempts to allege a claim under RICO against all four of the moving defendants. In order to state a civil RICO claim under 18 U.S.C. § 1962(c), "a plaintiff must allege that a defendant, 'employed by or associated with' an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs 'through a pattern of racketeering activity.'" *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp*., 84 F.3d 629, 633 (2d Cir. 1996) (quoting 18 U.S.C. § 1962(c) and *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025, 104 S. Ct. 1280, 79 L. Ed. 2d 684 (1984)). Plaintiffs base their RICO claim on allegations that defendants engaged in mail, wire and bank fraud when they made fraudulent and misleading representations to obtain mortgage loan money and steal plaintiffs' property. (Compl. ¶ 111-132.) In order to adequately plead a RICO claim, plaintiffs must allege "that each defendant participated in the conduct of the enterprise through a pattern of racketeering, which must consist of at least two racketeering acts that exhibit the necessary continuity and relatedness to constitute a pattern." *Zito v. Leasecomm Corp.*, No 02-CV-8074 (GEL), 2003 WL 22251352, at *17 (S.D.N.Y. Sept. 30, 2003); *accord DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

1. Predicate Acts under RICO

Plaintiffs have not properly alleged that Southern Star, FNBA, Moonis, or Aurora engaged in two or more acts constituting a pattern of racketeering. *See* 18 U.S.C. § 1962(c). The predicate acts listed in plaintiffs' complaint are mail fraud, wire fraud and bank fraud. "A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc.*, 84 F.3d at 633. Because the predicate acts alleged are fraudulent activities, the particularity requirements of 9(b) apply. *Moore v. PaineWebber, Inc*., 189 F.3d 165, 172-173 (2d Cir. 1999). In the context of RICO, in order to satisfy Rule 9(b), a pleading must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (internal quotations omitted).

---

[7] Plaintiffs' opposition contains no page numbers. However, the statement at issue appeared on the fifth page of the document.

Again, as described above, plaintiffs fail to identify any alleged fraudulent statements by Southern Star, FNBA, or Aurora. Aurora's involvement with the transaction, if any, is wholly unclear from the face of the complaint. The most that can be surmised from the complaint is that Aurora is the current holder of the mortgage on the property at issue. (Compl. ¶ 94.) The complaint is completely devoid of any facts from which one could even infer that Aurora was engaged in a scheme to defraud the plaintiffs and certainly does not identify any statements that plaintiffs claim were false or misleading. Plaintiffs do not even attempt to allege facts that would demonstrate participation, knowledge and/or intent on the part of Aurora to obtain mortgage loan money and to take plaintiffs' property. Because plaintiffs fail to plead that Aurora committed fraud, plaintiffs have not stated a claim that Aurora has engaged in a racketeering activity under 18 U.S.C. 1961. Accordingly, to the extent plaintiffs' fifth cause of action purports to assert a claim of civil RICO violations against Aurora, that claim is dismissed.

The Complaint suffers from a similar defect as to Southern Star and FNBA. Based on the facts alleged in the complaint, it appears Southern Star's only involvement in the transaction was that the closing took place at Southern Star's offices. (Compl. ¶ 56.) As to FNBA, it appears that FNBA made a mortgage loan to defendant Levy in the amount of $427,500. (Compl. ¶ 63.) However, the complaint fails to allege any fraudulent conduct on the part of FNBA or Southern Star, other than the general conclusory allegations scattered throughout the pleading.

Plaintiffs cannot use a civil RICO claim in a complaint as a mechanism to identify which parties, if any, may have actually been involved in the allegedly fraudulent activity, without any facts supporting such an allegation. Plaintiffs' conclusory allegations that Aurora, Southern Star and FNBA engaged in mail and wire fraud are insufficient to state a claim. Thus, plaintiffs have failed to plead the predicate acts.[8]

As discussed more specifically *supra*, plaintiffs do identify particular statements by Moonis that plaintiffs contend were fraudulent, including when the statements were made. Plaintiffs, however, fail to satisfy the second element of mail and wire fraud – intent. Plaintiffs' complaint fails to "provide

---

[8] Plaintiffs also attempts to plead bank fraud as a predicate act. The bank fraud statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice-- (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. In addition to the defects with respect to pleading scienter, as described above with respect to the mail and wire fraud claims, plaintiffs have not pled an intent to deceive a bank, a crucial element of the claim. *United States v. Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997) ("In order for the bank fraud statute to apply, the fraud must be against the bank."). The Second Circuit has held "that where the fraud . . . is aimed not at the bank, but at an individual, the offense is not bank fraud." *See id*. (citing *United States v. Blackmon*, 839 F.2d 900, 904 (2d Cir. 1988)). Accordingly, plaintiffs failed to plead the predicate act of bank fraud.

8

some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent." *Powers v. British Vita P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (internal quotations omitted). All that can be determined from the facts of the complaint is that Moonis filled out the information of the HUD-1. There are no factual allegations that tend to show that Moonis intended to make false statements in the HUD-1 or even the origination of the information in the HUD-1 which might show who originally calculated any of the numbers that were ultimately filled in by Moonis.

2. RICO's Continuity Requirement

Even if plaintiffs properly pled the predicate acts, plaintiffs must show that the acts are related and that they amount to or pose a threat of continuing criminal conduct. *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997). "[A] plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')." *GICC Capital Corp v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995), *cert. denied*, 135 L. Ed. 2d 1067, 116 S. Ct. 2547 (1996). Here, plaintiffs have alleged neither. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Each of the predicate acts alleged by plaintiffs occurred on or around September 28, 2004, the closing date. Plaintiffs do not allege a threat of continuity. Instead, the facts alleged demonstrate a one-time occurrence. Once the allegedly fraudulent assignment of the mortgage occurred, the scheme ended. *See GICC Capital*, 67 F.3d at 466 (finding no open-ended continuity where a scheme was "*inherently* terminable"). Further, "closed-ended continuity can only be shown through conduct occurring over 'a *substantial* period of time." *Id.* at 467 (quoting *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). A period of a few weeks or months does not constitute a "substantial period of time." *See Metromedia v. Fugazy*, 983 F.2d 350 (2d Cir. 1992), *cert. denied*, 124 L. Ed. 2d 662, 113 S. Ct. 2445 (1993) (finding that a jury instruction that "a few weeks or months" might constitute "a substantial period of time" was erroneous but harmless given the acts found by the jury). The conduct alleged by plaintiffs as to the moving defendants occurred on one day - the day of the closing. The fraudulent scheme plaintiffs attempt to allege is a single scheme that was directed specifically at plaintiffs with the sole purpose of defrauding plaintiffs out of their home. Accordingly, plaintiffs have not alleged a closed-ended continuity. Under the facts as alleged by plaintiffs, RICO is not the proper course of redress. *Estate of Warhol*, 119 F.3d at 97 ("[C]ourts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."). Thus, even assuming plaintiffs adequately pled that the moving defendants committed the predicate acts, the predicate acts alleged do not "amount to or pose a threat of continued criminal activity." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see also Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 624-625 (S.D.N.Y. 2006) ("'Courts have uniformly and consistently held that schemes involving a single, narrow purpose and one or few participants directed towards a single

9

victim do not satisfy the RICO requirement of a closed or open pattern of continuity.'") (quoting *Medinol Ltd. v. Boston Scientific Corp.*, 346 F. Supp. 2d 575, 616 (S.D.N.Y. 2004)).

Accordingly, plaintiffs' complaint fails to allege a pattern of racketeering as to defendants Moonis, Southern Star, Aurora and FNBA.

### 3. The Enterprise Requirement

Plaintiffs also failed to plead facts demonstrating defendants are employed by or associated with an enterprise. A RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" which is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Here, plaintiffs have alleged no facts that could support a conclusion that the moving defendants were associated with one another for a common purpose. Plaintiffs have not set forth any evidence that defendants form an "'ongoing organization, formal or informal' or any "evidence that the various associates of the alleged enterprise function as a continuing unit.'" *First Capital Asset Mgmt.*, 385 F.3d at 173 (quoting *Turkette*, 452 U.S. at 583). There are insufficient factual allegations to support a conclusion that moving defendants were associated with one another for a common purpose. In sum, plaintiffs fail to allege how each defendant associated with other defendants in the enterprise, defendants' roles in any alleged enterprise, or even the structure and functioning of the alleged enterprise.

Even assuming *arguendo* that plaintiffs properly alleged a racketeering enterprise, plaintiffs failed to allege that the moving defendants participated in the operation or management of that enterprise. The Supreme Court announced in *Reves v. Ernst & Young* that:

> In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required.

507 U.S. 170, 179 (1993). Pursuant to the rule announced in *Reeves*, courts apply the "operation and management" test to determine whether ones participation is sufficient to establish liability under RICO. Though the Second Circuit has described the "operation and management" test as establishing a "relatively low hurdle for plaintiffs to clear" at the pleading stage, plaintiffs must still clearly allege "that the RICO defendant must have played '*some* part in directing the enterprise's affairs.'" *First Capital Asset Mgmt.*, 385 F.3d at 176 (quoting *DeFalco v. Bernas*, 244 F.3d 286, 310 (2d Cir. 2001)). Here, plaintiffs have not alleged any facts that would demonstrate any of the moving defendants participated in the operation or management of an enterprise.[9]

---

[9] To the extent plaintiffs attempt to assert a RICO conspiracy claim under § 1962(d), that claim must also necessarily fail for the same reasons. *See*

10

Accordingly, plaintiffs' RICO claim fails to properly allege an enterprise or moving defendants' participation in the enterprise.

### C. RESPA

Finally, plaintiffs' eighth cause of action attempts to allege a claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2607. This section of the RESPA statute provides in relevant part:

(a) Business referrals

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person

(b) Splitting charges

No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607. It is not clear from the complaint what facts plaintiffs are alleging constitute a violation of RESPA. Plaintiffs identify several allegedly fraudulent payments listed in the HUD-1. However, none of these payments were made to the moving defendants. Accordingly, because plaintiffs do not alleged that they were charged by or paid any fees to, FNBA, Southern Star, Aurora, or Moonis, to the extent plaintiffs are asserting a RESPA claim against these defendants, the claim must fail.

### D. Leave to Amend

Federal Rule of Civil Procedure 15(a) states that leave to amend "shall be freely given when justice so requires." A court must make reasonable allowances to make sure *pro se* plaintiffs do not forfeit rights due to a lack of legal training. "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears *beyond doubt* that the plaintiff[s] can plead no set of facts that would entitle [them] to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (emphasis added); *accord Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.") (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03 at 9-34 (2d ed. 1986). Plaintiffs have not had prior opportunity to amend their complaint and, though it appears from the complaint that the

---

*First Capital Asset Management*, 385 F.3d at 164 ("[B]ecause Plaintiffs' RICO conspiracy claims are entirely dependent on their substantive RICO claims, we also concur in the District Court's dismissal of the RICO conspiracy claims.").

allegations of fraud are primarily focused on McDowell, the Court cannot conclude that any attempt to remedy the defects in plaintiffs' claims against the moving defendants would necessarily be futile. In addition, the Court finds that granting plaintiffs leave to amend their complaint will not result in undue prejudice to defendants. Moreover, there is no other basis, such as bad faith or undue delay to warrant a denial of leave to amend. Accordingly, plaintiffs will be given leave to amend.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss and motions for judgment on the pleadings are granted in their entirety. Because the pleading failures are, in part, potentially capable of being remedied, the complaint is dismissed as to defendants Aurora, FNBA, Southern Star and Moonis, with leave to amend. Plaintiffs are to file any such amended pleading within thirty days, or the dismissal will be deemed to be with prejudice.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 18, 2006
Central Islip, New York

\* \* \*

Plaintiffs appeared *pro se*. The attorney for defendant Tom Moonis is Matthew Flanagan, Esq., L'Abbate, Balkan, Colavita & Contini, L.L.P., 1050 Franklin Avenue, Garden City, New York 11530. The attorney for defendant Southern Star Mortgage Corp. is Michael J. Langer, Esq., 100 Garden City Plaza, Suite 408, Garden City, New York 11530. The attorneys for defendant First National Bank of Arizona are Joseph Boyle, Esq. and Geoffrey W. Castello, Esq., Kelly Drye & Warren, L.L.P., 101 Park Avenue, New York, New York, 10178. The attorney for defendant Aurora Loan Services, Inc. is Samit G. Patel, Esq., Fein Such & Crane, L.L.P., 747 Chestnut Ridge Road, Suite 200, Chestnut Ridge, New York 10977.